**SO ORDERED.**

**SIGNED this 29th day of September, 2016.**



_____
Robert E. Nugent
United States Bankruptcy Judge

_____

DESIGNATED FOR ONLINE PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

IN RE:

STEPHEN EUGENE WILHELM      Case No. 12-11235
DANA MICHELLE WILHELM      Chapter 13

                Debtors.

### ORDER DENYING TRUSTEE'S MOTION TO MODIFY CONFIRMED PLAN

A modified plan's proponent must prove that the proposed modification complies with the requirements of 11 U.S.C. § 1325(a), including that the debtor will be able to make all of the proposed payments.[1] The Chapter 13 Trustee proposes that Stephen and Dana Wilhelm's confirmed plan be modified to increase their monthly payments based upon additional disposable income that includes a substantial bonus

---

[1] *See* 11 U.S.C. § 1325(a)(6), generally referred to as the feasibility requirement for confirmation, and 11 U.S.C. § 1329(b)(1) requiring modifications under § 1329(a) to comply with the confirmation requirements. Unless otherwise noted, all statutory references are to Title 11, U.S.C., as amended.

1

paid to Stephen in 2015. So far in 2016, however, Stephen's monthly income lags 2015 by about $1,000 per month. Even after adjusting the Wilhelms' expenses for certain disallowed expenditures, they cannot make the payments the Trustee seeks.

Because the modification is not feasible and can't be approved, the Wilhelms' originally confirmed 52-month plan remains binding.[2] September of 2016 marks the 52nd month. If the debtors have completed all 52 payments and otherwise complied with the discharge requirements, they should be granted a discharge and the case closed.[3]

Facts

Stephen and Dana Wilhelm filed this case in May of 2012. At that time, Stephen operated a construction company, Trinity Home Restoration, and Dana worked as an administrative assistant at a church. The Wilhelms' four children ranged in age from 8 to 17. They proposed a 48-month plan with $320 payments due each month.[4] The trustee objected and, after negotiation, submitted an agreed confirmation order on October 25, 2012.[5] The confirmation order required the debtors to turnover their income tax returns and refunds to the Trustee not later than April 25 each year, with any refunds being paid to allowed general unsecured creditors. The debtors provided the trustee with $3,000 from their 2012 tax refund in August of 2013.[6] All subsequent returns were provided to the trustee as well, but most were

---

[2] § 1329(b)(2).
[3] The chapter 13 trustee Laurie B. Williams appeared by her attorney Karin Amyx. Debtors appeared in person at trial and by their attorney David Lund.
[4] Debtors were below-median income debtors, requiring an applicable commitment period of 3 years. Ex. D.
[5] Doc. 28.
[6] Ex. I

**2**

late because the debtors received filing extensions or amended their returns.[7] In October of 2015, the Wilhelms provided their 2014 tax return to the Trustee, reporting gross income of $107,600, some $20,000 attributable to business income, but owing an additional $255 in taxes for tax year 2014.[8] Based upon the 2014 returns, the trustee filed this motion to modify the confirmed plan in late January 2016.[9] The 2015 tax return, provided to the trustee after she filed this motion, revealed that Stephen was winding his business down and had gone to work for National Catastrophe Restoration Inc. (NCRI) while Dana no longer worked outside the home.[10] The gross wages amounted to $106,000. The Wilhelms recognized a $16,744 business loss and were entitled to a $5,772 refund.

Complicating matters for the debtors was an adjustment to their 2013 return. After their plan was confirmed, one of Trinity's account debtors paid for a job by paying Stephen personally in 2013. When the IRS connected this payment with Stephen's social security number rather than Trinity's tax identification number (probably through a Form 1099), it assessed additional tax, penalty and interest for tax year 2013 in the amount of $15,990.[11] This adjustment occurred in February of 2015. The IRS then set off this amount against their 2015 refund, leaving the Wilhelms still owing some $10,000 of the additional 2013 tax. On June 8, 2015 the

---

[7] Only the 2014 and 2015 tax returns were admitted into evidence. Ex. E and K. The trustee filed a motion to dismiss the case for failure to turn over the 2013 return and refund and ended up withdrawing the motion. *See* Doc. 35, 38, and 39.
[8] Ex. E.
[9] Doc. 60.
[10] Ex. K.
[11] Ex. K, p. 36.

**3**

trustee filed a motion to dismiss for a material default on plan payments.[12] That motion was resolved in late December of 2015 by agreement of the parties to extend the original 48-month plan term to 52 months (September of 2016) for the Wilhelms' to cure the default.[13]

Stephen provided the trustee a paystub from his employer NCRI. As of December 16, 2015, he had received gross salary plus a bonus of $20,708 totaling $103,431.[14] His gross salary was $1,635 per week (net $1,138 per week). His net pay through December 13, 2015 was $75,102. The 2015 return suggests Dana had stopped working by 2015. The trustee filed this motion to modify on January 26, 2016, requesting an upward adjustment of the debtor's plan payments from $320 to $4700 a month [sic] and extension of the plan term from 52 to 60 months.[15] The Wilhelms filed an amended Schedule I and J on January 28, 2016, referred to here as Exhibit F.[16] Based on Stephen's 2015 pay and bonus, they reported monthly gross income of $8,964, monthly net income of $6,590, and monthly expenses of $6,270, leaving $320 in monthly income, not markedly different from what they reported in 2012 in support of confirmation. But on amended Schedule J, they reported monthly college expenses of $1,200 for their eldest child and monthly homeowners association (HOA) dues of $200.[17] It turned out later that they were not actually paying the HOA dues.

---

[12] Doc. 42.
[13] Doc. 58.
[14] Ex. G.
[15] Doc. 60. At trial, the Trustee argued for an increase of $1,400 to $1,720, not $4,700. Section 1329(a)(1) and (a)(2) permit modifications of a confirmed plan that increase the plan payments and extend the term.
[16] Doc. 64.
[17] Ex. F.

4

The trustee's proposed modification would have tacked at least $1,400 onto their current $320 payment and would have extended their plan to 60 months.

The debtors' original Schedules I and J showed that Dana Wilhelm was working, reporting a monthly salary of $1,854, and that Stephen's annualized gross business income amounted to $10,294, for a total of $12,047.[18] They reported expenses of $11,726 (including $8,374 in business expenses) for a monthly net of $320. There were no college or HOA expenses on the original Schedule J.[19] They were below median debtors. Their 2016 Schedule I and J discloses Stephen's net income as being $6,590 and non-business expenses of $6,270 that include the college expense and HOA fees.[20] According to the debtors' testimony, their daughter entered and completed college while they were in the plan, graduating this past spring and eliminating the $1,200 expense as of this past June.

At the June 14 hearing, Stephen's June 1, 2016 paystub was admitted into evidence.[21] It reflects his gross weekly salary from NCRI of $1,635 (net $1,046 per week) with a cumulative bonus through the first five months of 2016 of $3,788. Stephen's cumulative net pay through five months was $27,922 or $5,584 per month: $1,000 less than was reported on the most recent Schedule I.[22] Stephen receives

---

[18] Ex. C.
[19] Which is somewhat surprising because debtor's eldest child would have entered college in the fall of 2012, while the plan was awaiting confirmation. Stephen testified that the child's scholarships did not pay for all of her education, requiring them to chip in an average $1,200 a month. Nothing in the record tells us when this expense kicked in.
[20] Ex. F. The change in the nature of the Wilhelms' income, combined with the intervening changes to Official Form 106I and 106J, impede an apples-to-apples comparison because certain categories on the forms have changed. *See e.g.*, "food" on their original Schedule J, $400, and "food and housekeeping supplies" on the 2016 Form 106J, $900.
[21] Ex. J.
[22] *Cf.* Ex. F.

5

incremental bonuses that are paid monthly based on how much time he spends travelling to other places to supervise disaster recovery contracts. In 2015, he spent a lot of time supervising jobs out of state. Now that he has recently been named director of operations, he will be travelling less this year than in the past and receiving fewer travel-related bonuses. $5,584 per month isn't enough to pay the debtors' amended Schedule J expenses of $6,270.[23] Even if we subtract the no longer paid $1,400 for college and HOA dues from that amount, the debtors' adjusted monthly expenses are $4,870, leaving them net monthly income of $714 -- far short of the $1,720 upward adjusted plan payment proposed by the Trustee.

Analysis

Courts can modify a debtor's confirmed plan payments upward if the debtor's financial fortunes improve during the case. As Judges Lundin and Brown state in their treatise, "[r]eported decisions have aggressively allowed trustees and unsecured claim holders to modify plans to increase payments—often over the strong opposition of debtors."[24] A plethora of courts, including some sitting here in Kansas,[25] have increased debtors' plan payments to recognize substantial changes in their incomes,[26]

---

[23] Ex. F.
[24] Keith M. Lundin & William H. Brown, CHAPTER 13 BANKRUPTCY, 4TH EDITION, § 266.1, at ¶ 266.1[2], Sec. Rev. June 9, 2004, www.Ch13online.com.
[25] *In re Self*, No. 06-40228, 2009 WL 2969489 (Bankr. D. Kan., Sept. 11, 2009) (Karlin, J.) (recognizing chapter 13 trustee's authority to seek prospective modification of chapter 13 plan based upon an increase in debtors' disposable income).
[26] *Arnold v. Weast (In re Arnold),* 869 F.2d 240 (4th Cir. 1989) (Debtor's salary increased from $80,000 to $200,000 annually after confirmation.).

**6**

their winning a state lottery,[27] or their obtaining a sizeable inheritance.[28] Most recently, the Seventh Circuit has weighed in with *In re Powers*, holding that an upward modification is by no means forbidden in the Code and that § 1329's lack of guidance in this area has "left the development of those standards to the courts."[29] As that panel stated, "a bankruptcy court may allow modification to increase the debtor's payments if, in its discretion, it concludes that a change in the debtor's financial circumstances makes an increase in payments affordable."[30]

The Trustee's argument that "fairness" requires that the plan be modified retroactively to increase the payments to "catch" Wilhelms' increased income, along with the college expenses they paid and the HOA fees they didn't pay, runs afoul of several Code sections. First, § 1327(a) binds all the parties to the provisions of a confirmed plan. Second, § 1330(a) makes clear that a confirmation order can only be revoked for fraud, and even then, only within 180 days of its entry. The debtor's plan was confirmed over four years ago. Finally, § 1329(b)(2) provides that the modified plan becomes the plan unless the modification is not approved by the Court. As the *Powers* court notes, this section means that the Court retains the power to modify the plan as of the date the Trustee sought the modification.[31] Just as a debtor cannot

---

[27] *In re Koonce*, 70 B.R. 72 (Bankr. D.N.H. 1987) (Debtor won a million dollars in Massachusetts lottery). *See also In re Kirby,* 2012 WL 733884 (Bankr. D. Neb. Mar. 6, 2012) (debtor settled personal injury claim for $495,000).
[28] *Goodman v. Gorman,* 534 B.R. 656 (E.D. Va. 2015) (debtor inherited $36,000 from mother's estate two years after plan confirmed); *In re Euerle*, 269 B.R. 250 (Bankr. M.D. Fla. 2000) (Debtor received $300,000 bequest).
[29] *Germeraad v. Powers (In re Powers),* 826 F. 3d 962, 974 (7th Cir. 2016).
[30] *Id*.
[31] *Id*. at 969.

**7**

retroactively reduce her payments via modification, a trustee or creditor cannot seek to retroactively increase a debtor's payments.

The Trustee's concerns are understandable. This Court might not have confirmed a plan based on the Wilhelms' reducing their disposable income to allow for the payment of college expenses when, certainly, college was in prospect when this plan was confirmed. The Trustee and the Court weren't aware of that expense until January 28 of this year when the Wilhelms amended Schedules I and J.[32] The debtors provided their tax returns months later than the confirmation order required. The Trustee took action before the Court only on the late 2013 return.[33] When the debtors provided the 2014 return to the trustee, she filed this motion to modify three months later, and they filed amended Schedule I and J, disclosing their new income and job status.[34] Nothing in the Code required the debtors to amend their plan when they experienced the 2014 increase in income or Stephen received the $20,708 bonus in 2015.[35] And nothing in the Code authorizes a court to reopen the previous confirmation order or otherwise "punish" the debtor for activities that did not violate the Code or the Rules. It would be difficult to sanction these debtors for replacing a failed business with decent employment and helping to put a child through college despite being in chapter 13.

---

[32] As discussed in *In re Self,* the trustee has tools at her disposal to timely discover increases in disposable income. 2009 WL 2969489 at *10 (Bankr. D. Kan. Sept. 11, 2009). *See* § 521(f)(1) and (f)(4).
[33] *See* Doc. 35, 38, and 39.
[34] The Court observes that the confirmation order required debtors to "immediately notify" the trustee and court in writing upon a change in employment. Ex. A.
[35] *See In re Self*, 2009 WL 2969489 at *10 (Bankr. D. Kan. Sept. 11, 2009).

8

The Trustee's remedy here is limited to seeking the confirmation of her proposed modification. Section 1329(b)(1) applies § 1325(a)'s confirmation requirements to confirming or disapproving proposed modifications.[36] Section 1325(a)(6) requires the Trustee to prove that the debtor can make the payments proposed under the modification. Stephen's June 1, 2016 paystub shows he can't.[37] His 2016 income has not approached his 2015 levels and likely won't. Having found as a fact that his monthly income this year is $5,540, I conclude that the Wilhelms can't service a $1,720 or $4,700 plan payment, even if their daughter's college expenses (now ended) and HOA dues are backed out of the calculations. Plus, the Wilhelms remain liable for the $10,000 unpaid balance of the 2013 tax liability. Accordingly, the Trustee has not met her burden to show that this modification is feasible. Because the debtors' financial situation has not substantially improved, there is no basis for upwardly modifying their plan payments. The trustee's proposed plan modification must be denied.

With that result, the originally confirmed plan remains the plan. If the Wilhelms have completed their 52 payments under that plan, they should receive a discharge and the case be closed. The Trustee's motion is DENIED.

# # #

---

[36]The good faith requirement in § 1325(a)(3) applies to the proponent, the trustee in this event, not the debtor. *See In re Powers, supra* at 975 (the debtor's good faith is not at issue when the modification is proposed by the trustee). No one questions the Trustee's good faith in pursuing the creditors' aggregate interests here as she has ably done for many years. Implicit in the confirmation of the original plan are my determinations of the debtor's good faith under § 1325(a)(3) and § 1325(a)(7)—those determinations are final. *See also In re Self,* 2009 WL 2969489 *9 (Bankr. D. Kan. Sept. 11, 2009) (debtors' alleged lack of good faith is not pertinent to trustee's proposed plan modification).

[37] Ex. J.

**9**